■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BILLY J. PALMER, Appellant. [669 NYS2d 426] —Spain, J. Appeal from a judgment of the County Court of Chemung County (Castellino, J.), rendered January 17, 1997, upon a verdict convicting defendant of the crime of assault in the first degree.

Defendant was indicted on one count of assault in the first degree. The indictment states that defendant, with intent to cause serious physical injury, stabbed Todd Mead three times in the chest and slashed Mead's forearm. The record reveals that on the date of the incident defendant, Mead and Helen Weller lived together in a home which defendant and Weller co-owned, and, further, that defendant and Mead were romantically involved for over two years. In the early morning hours of September 16, 1996, following an evening of drinking, Mead became violent, to wit, throwing frying pans through a glass kitchen window, damaging the stereo equipment and breaking defendant's neon beer sign. Although Weller left the house seeking help shortly after Mead began exhibiting violent behavior, she later returned and, after witnessing the end of an altercation between Mead and defendant, called 911; as a

result of the altercation Mead suffered life-threatening knife wounds. Following a jury trial wherein five witnesses testified on behalf of the People and defendant testified on his own behalf, defendant was found guilty as charged; notably, Mead testified before the Grand Jury but did not testify at trial. Subsequently, County Court denied defendant's motion to vacate the judgment of conviction and sentenced him to an indeterminate prison term of 4 to 8 years. Defendant appeals.

We affirm. Initially, we reject defendant's contention that County Court abused its discretion in denying his motion to vacate the judgment of conviction. Inasmuch as the alleged newly discovered evidence, Mead's affidavit, was known by defense to exist before the trial, we conclude that defendant was not entitled to a new trial based on newly discovered evidence and that County Court did not err in denying defendant's motion without a hearing (*see, People v Wilson*, 168 AD2d 696, 699; *People v Moore*, 147 AD2d 924, *lv denied* 73 NY2d 1019; *People v Rivera*, 118 AD2d 877, 878; *People v Suarez*, 98 AD2d 678, 679; *People v Messina*, 73 AD2d 899).

Next, we reject defendant's contention that the verdict was not supported by legally sufficient evidence. Weller's testimony confirmed defendant's testimony that Mead started the altercation when he became violent and that, when defendant attempted to stop Mead by speaking with him and touching him on the forearm or shoulder, Mead pushed defendant. However, Weller did not testify that the altercation began after Mead hit defendant in the head or face, nor did she recall hearing Mead threaten to kill defendant as was defendant's version of the story.

Further, Weller's testimony contradicted that of defendant with regard to the actual stabbing. According to defendant, during the altercation Mead threatened to kill him and tried to choke him on two separate occasions after which, when Mead surprised defendant and tried to choke him for the third time, defendant stabbed Mead in order to keep himself from passing out due to his weakened state and alleged inability to pry Mead's fingers off his throat. Weller, however, testified that she did not recall seeing Mead strangle defendant either before she left the house or when she returned home; significantly, Weller testified that as she reentered the house she heard Mead say, " 'Put down that knife, please don't cut me,' * * * or something to that effect," and that as she walked closer to where Mead and defendant were, she could see Mead up against a door with his hands up in the air, palms out, looking as if he were trying to hold off defendant. Weller further testi-

fied that Mead had nothing in his hands and that after he called out to her, she saw a black or brown object in defendant's hand go up against Mead's right side and called 911 upon seeing Mead's wounds. There was also testimony from police officers who had responded to the 911 call that defendant's neck had not appeared bruised or swollen later in the day and that defendant stated that he told Mead that if Mead ever beat defendant again, one of them would end up dead.

Viewing the aforementioned evidence in the light most favorable to the People (*see, People v Williams*, 84 NY2d 925, 926; *People v Manini*, 79 NY2d 561, 568-569; *People v Johnson*, 209 AD2d 721, 722, *lv denied* 84 NY2d 1033), we conclude that a rational trier of fact could have concluded that defendant intended to seriously injure Mead when he stabbed him with a knife and that defendant could not have reasonably believed that Mead was using or was about to use deadly physical force against him (*see*, Penal Law § 35.15 [2]; *People v Bleakley*, 69 NY2d 490, 495; *People v Brown*, 184 AD2d 856, 858, *lv denied* 80 NY2d 927; *People v Fernandez*, 135 AD2d 867, 868, *lv denied* 71 NY2d 895). Moreover, viewing the evidence in a neutral light, and upon the exercise of this Court's factual review authority, we conclude that the verdict is not against the weight of the evidence inasmuch as the jury's evaluation of the witnesses' credibility and the weight afforded their testimony is amply supported in the record (*see, People v Bleakley, supra*, at 495; *People v Fullard*, 233 AD2d 757, 759, *lv denied* 89 NY2d 1092).

We also reject defendant's contention that he was denied effective assistance of counsel. It is well settled that the claim of "ineffective assistance of trial counsel requires proof of less than meaningful representation, rather than simple disagreement with [counsel's] strategies and tactics" (*People v Rivera*, 71 NY2d 705, 708-709; *see, People v Benn*, 68 NY2d 941). Our review of the record supports the conclusion that defendant received effective assistance of counsel (*see, People v Desordi*, 238 AD2d 738, *lv denied* 90 NY2d 904). Here, counsel's decision, among others, not to seek the introduction of Mead's Grand Jury testimony or his pretrial affidavit, his failure to notify County Court or the People that he had been contacted by Mead despite knowing that a material witness warrant had been issued for him, and his decision not to call an expert on domestic violence may clearly be attributed to well-calculated trial strategy (*see, People v English*, 246 AD2d 925; *see also, People v Pressley*, 241 AD2d 621; *People v Alstin*, 239 AD2d 790).

Finally, we have considered defendant's remaining contentions, including County Court's failure to order, *sua sponte,* Mead's Grand Jury testimony into evidence and the alleged harshness of his sentence, and find them to be either unpreserved for appellate review or without merit.

Mikoll, J. P., Crew III, White and Carpinello, JJ., concur. Ordered that the judgment is affirmed.